IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

WILLARD DAVID HUTCHINSON,

               Petitioner,

v.                                                                  CIVIL ACTION NO.   3:14-14975

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

               Respondent.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Petitioner Willard David Hutchinson's *pro se* Petition for Writ of Habeas Corpus, brought pursuant to 28 U.S.C. § 2251 (ECF No. 2), Respondent's Motion for Summary Judgment (ECF No. 10), and Respondent's Corrected Motion for Summary Judgment (ECF No. 21).[1]   Pursuant to 28 U.S.C. § 636(b)(1)(B), this action was referred to the Honorable Cheryl A. Eifert, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendations for disposition.  Magistrate Judge Eifert performed a thorough review of the pending Petition and motions, affording Petitioner's claims the liberal construction required for *pro se* pleadings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).   On January 9, 2015, Magistrate Judge Eifert submitted Proposed Findings and

---

[1] Upon Respondent's Motion (ECF No. 20), Magistrate Judge Eifert granted a request to file a Corrected Motion for Summary Judgment (ECF No. 23).  Magistrate Judge Eifert now recommends, and the Court agrees, that Respondent's original Motion for Summary Judgment (ECF No. 10) be denied as moot.

Recommendations (ECF No. 24). On February 11, 2015, Petitioner timely filed Objections to the Magistrate's findings and recommendations (ECF No. 27).[2]

The Court has reviewed *de novo* those portions of Magistrates Judge Eifert's Proposed Findings and Recommendations to which Petitioner objects, and it finds that Petitioner's objections lack merit. For the reasons set forth below, the Court **ACCEPTS AND INCORPORATES** the Proposed Findings and Recommendations of the Magistrate Judge, **GRANTS** Respondent's Corrected Motion for Summary Judgment (ECF No. 21), **DENIES** Respondent's Motion for Summary Judgment as moot (ECF No. 10), **DENIES** Petitioner's Petition for a Writ of Habeas Corpus (ECF No. 2), and **DISMISSES** this action from the docket of the Court.

## I. PETITIONER'S OBJECTIONS

In the Proposed Findings and Recommendations, Magistrate Judge Eifert has set forth the factual and procedural history in considerable detail. The material facts need not be repeated here as the Magistrate Judge has more than adequately detailed them in her report. Rather, the Court incorporates by reference that factual and procedural history and next dedicates itself to setting out Petitioner's Objections to the proposed findings and recommendations.

Here, Petitioner objects to the following findings and conclusions by Magistrate Judge Eifert:

(1) The trial court properly admitted proffered 404(b) evidence;
(2) Trial counsel's decision not to provide expert testimony or evidence during sentencing does not amount to ineffective assistance of counsel;
(3) Though styled as an "actual innocence" claim, Petitioner's seventh ground for relief in fact challenges the sufficiency of the evidence; and
(4) There was sufficient evidence to support Petitioner's conviction.

---

[2] Petitioner moved for and was granted an extension of time to file objections to Magistrate Judge Eifert's Proposed Findings and Recommendations (ECF Nos. 25 and 26).

Petitioner further adds the general residual statement that:

> failure to address any specific elements of statements within the Magistrate [Judge's] recommendation to grant summary judgment in no way should be considered as a rejection of the Petitioner's previous contentions, nor should such be considered as acceptance of the respondent's or magistrate's position or allegations.

ECF No. 28 at 12.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1), the Court must conduct a *de novo* review of any portion of the Magistrate Judge's report to which objection is timely made. As to those portions of the report to which no objection is made, the Magistrate Judge's report will be upheld unless it is "clearly erroneous" or "contrary to law."[3] *See Webb v. Califano*, 468 F.Supp. 825, 828 (E.D. Cal. 1979) (citing 28 U.S.C. § 636(b)(1)(A)). Furthermore, a court need not conduct a *de novo* review "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) (citations omitted).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs federal habeas corpus petitions filed by persons in state custody. 28 U.S.C. § 2254. With respect to these persons, the statute establishes a deferential standard of review. Specifically, the AEDPA provides

---

[3] Petitioner revisits objections to the Respondent's portrayal of background facts in its memorandum in support of summary judgment. In particular, Petitioner notes that Chris Ford was initially considered as a possible suspect, that Petitioner's fingerprints were never found on the presumed murder weapon, and that testimony offered by Chris Ford and Jessica Ford varied over the course of the investigation and proceedings. Though raised within Petitioner's Objections, these points are not directed to the Magistrate Judge's findings, but rather to Respondent's memorandum. As such, it is not necessary for the Court to address these points, instead focusing on Petitioner's Objections to the Proposed Findings and Recommendations. Moreover, the Court notes that it is not at all unusual for parties in any action to strategically characterize the relevant factual background, and it is wholly within the capabilities and expertise of the Magistrate Judge and this Court to distill an objective reading from the necessarily slanted writings of the parties.

that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §§ 2254(d)(1) and (d)(2). Further, the statute instructs that "a determination of a factual issue made by a State court shall be presumed to be correct." *Id.* at § 2254(e)(1). Said differently, the statute provides that a federal court may grant a habeas petition only if it finds that no reasonable jurist could agree with the State court's interpretation of either the facts or the law.

Here, Respondent moves for summary judgment. To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an

essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

### III. ANALYSIS

While the proposed findings and recommendations thoroughly considers twelve assignments of error raised in the Petition, Petitioner specifically objects to the proposed findings with respect to four of those assignments of error: (1) Ground One, concerning the admission of 404(b) evidence; (2) Ground Two, concerning the exclusion of rebuttal testimony; (3) Ground Three, raising a Sixth Amendment violation for ineffective assistance of counsel; and (4) Ground Seven, challenging the sufficiency of evidence and styled by Petitioner as an "actual innocence" claim.[4] Each objection is reviewed in turn below.

#### A. Admission of 404(b) Evidence

Hutchinson's first assignment of error alleges that the trial court improperly admitted 404(b) offered by Jessica Ford concerning incidents of violence between Petitioner and Linda Rigney on December 2000 and January 2001. Magistrate Judge Eifert found, and this Court agrees, that Petitioner has failed to identify any clearly established federal law that was unreasonably applied by the state courts in admitting that evidence.

---

[4] As noted above, Petitioner's Objections also include an apparent attempt to reserve argument on issues not otherwise specifically addressed. The Court, however, will not pursue a *de novo* review of the record where only general or conclusory objections are made. *See Webb*, 468 F.Supp. at 828 (citing 28 U.S.C. § 636(b)(1)(A)). Instead, the Court engages in such a review only where specific allegations of error are identified by Petitioner. 28 U.S.C. § 636(b)(1). That said, insofar as the Court has reviewed the entire record, searching for clear error in any portion of Magistrate Eifert's Proposed Findings and Recommendations, Petitioner may be assured that all of the arguments previously made by Petitioner have been considered, and the Court finds no clear errors in the corresponding portions of Magistrate Judge Eifert's Proposed Findings and Recommendations.

Petitioner now objects to that finding, but still fails to point to any clearly established federal law. Instead, Petitioner addresses the significance of the trial court's decision to admit the evidence. Indeed, Petitioner goes so far as to say that "the improper allowance of the 404(b) testimony of Jessica Ford made the entire conviction . . . possible." Pet.'s Obj. at 3, ECF No. 28. To the contrary, after a searching review of the record this Court is more than satisfied that the admitted 404(b) evidence did nothing of the sort. A considerable collection of relatively more material evidence supports his conviction, including, for example, eyewitness testimony of the incident and physical evidence from Petitioner's person and the crime scene.

That said, and as considered by Magistrate Judge Eifert, in rare circumstances, state evidentiary rulings can violate federal due process. *See Burket v. Angelone*, 208 F.3d 172, 186 (4th Cir. 2000). Here, however, Petitioner is unable to point to the requisite "circumstances impugning fundamental fairness or infringing specific constitutional protections" to raise federal due process concerns. *Barbe v. McBride*, 521 F.3d 443, 452 (4th Cir. 2008) (citations omitted). As in initial matter, the evidence was not itself so inherently prejudicial to otherwise violate due process. Moreover, Petitioner assuredly benefited from due process where (a) the trial court conducted a preliminary hearing to consider the admissibility of the 404(b) evidence and provided a detailed limiting instruction, (b) defense counsel was able to cross-examine Jessica Ford, and (c) Petitioner himself testified and offered a competing version of events for consideration by the jury.

Accordingly, this Court finds that Petitioner's objection to Magistrate Judge Eifert's finding and recommendation related to the admission of 404(b) evidence is without merit.

B. **Exclusion of Rebuttal Testimony from Ms. Hutchinson**

Hutchinson's second assignment of error alleges that the trial court improperly excluded rebuttal testimony to be offered by his mother, Barbara Hutchinson, regarding the December 2000

incident. Had she testified on the matter, Ms. Hutchinson would have offered testimony that Ms. Rigney phoned after the December 2000 incident and reported that the incident took place in the living room—as opposed to Ms. Ford's testimony that it occurred in the kitchen—and that Ms. Rigney had instigated the incidence of violence. It appears that the trial court excluded the testimony on hearsay grounds, and Petitioner maintains that it ought to have been admitted based on Rule 804 and 806 of the West Virginia Rules of Evidence and the curative admissibility rule, and that its exclusion violated Petitioner's due process rights. Magistrate Judge Eifert found, and this Court agrees, that Petitioner's claim is unpersuasive. Petitioner now objects to that finding, but presents largely the same unpersuasive argument already repeatedly considered and rejected.

The "right to due process guarantees the right to a fair opportunity to defend against the State's accusations . . . ." *United States v. Jinwright*, 683 F.3d 471, 482–83 (4th Cir. 2012) (internal quotations omitted). That said, "[a] defendant's interest in presenting such evidence may . . . bow to accommodate other legitimate interests in the criminal trial process." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). When bowing to such other legitimate interests, exclusion of evidence is only unconstitutional where exclusion infringed "upon a weighty interest of the accused" or "significantly undermined the fundamental elements of the defendant's defense." *Id.* at 308, 315.

Here, as reviewed by Magistrate Judge Eifert, Hutchinson has not established that the exclusion of Ms. Hutchinson's rebuttal testimony "infringed upon a weighty interest" or "significantly undermined the fundamental elements of his defense." *Id.* First, neither the testimony of Jessica Ford nor the excluded testimony of Ms. Hutchinson was fundamental to Petitioner's insanity defense. Petitioner was afforded some opportunity to advance an alternative narrative of the December 2000 incident through cross-examining Jessica Ford and offering his own recollection of events for consideration by the jury. That the trial court did not further allow

rebuttal evidence on this tangential issue certainly did not significantly undermine a fundamental element of Petitioner's insanity defense. Moreover, the offered rebuttal testimony would have further admitted an incident of violence between Petitioner and Ms. Rigney, differing from Jessica Ford's account only with respect to who instigated the violence and where it occurred. Had Ms. Hutchinson's testimony been allowed, regardless of who the jury decided to credit with correctly recalling who started it and where the incident happened, the admitted fact would remain that Petitioner punched and injured Ms. Rigney in December 2000.

Finally, in his objections, Petitioner repeatedly raises the point that Jessica Ford's testimony, in general and specifically with respect to 404(b) evidence, was not supported by any other evidence in the record. There is, however, no requirement that offered 404(b) evidence be supported by other evidence in the record. While the presence or absence of supporting evidence may influence the jury's determination of the appropriate weight to be afforded, it simply is not a prerequisite for admission and does not create a constitutional infirmity where none otherwise exists.

Accordingly, this Court finds that Petitioner's objection to Magistrate Judge Eifert's finding and recommendation related to the exclusion of rebuttal testimony from Ms. Hutchinson is without merit.

### C. Ineffective Assistance of Counsel

In his petition, Hutchinson raised a number of allegations that his trial counsel was ineffective, each of which was thoroughly and correctly considered by Magistrate Judge Eifert.[5]

---

[5] Petitioner's ineffective assistance of counsel allegations included (1) failure to move for a change of venue, (2) an alleged failure to conduct a reasonable investigation, (3) failure to obtain the testimony of a psychiatrist for sentencing, (4) failure to disqualify two prospective jurors, (5) failure to obtain the grand jury transcript, (6) failure to object to an alleged confrontation clause violation, (7) failure to move the trial court to compel an opportunity for pretrial interview with

Only some of those allegations are specifically revisited by Petitioner in his objections, and *de novo* review by this Court will be limited to issues raised by specific objections.

In assessing whether a defendant's Sixth Amendment right to counsel has been violated, the reviewing "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 690 (1984). That strong presumption demands a "context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time," without allowing the benefit of hindsight to alter the court's view. *Wiggins v. Smith*, 539 U.S. 510, 523 (2003). A successful ineffective assistance of counsel claim requires a defendant to show that (1) "counsel's performance was deficient" to such a degree that "counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.

With regard to the prejudice requirement, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding"—a test which "[v]irtually every act of omission of counsel would meet." *Id.* at 693. Rather, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Though markedly rare, a defendant may be excused from this requirement of showing prejudice "where assistance of counsel has been denied entirely or during a critical stage of the proceeding," and "only in 'circumstances of that magnitude' do we forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict." *Mickens v. Taylor*, 535 U.S. 162, 1240–41 (2002) (citations omitted).

---

Government witnesses Jessica and Chris Ford, and (8) failure to object to the inappropriate behavior of witnesses.

While the *Strickland* test presents a relatively high bar for a defendant on direct review, the standard is even more challenging in the context of a § 2254 proceeding. *See Harrington v. Richter*, 562 U.S. 86 (2011). In the context of a § 2254 proceeding, the question is not only "whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* at 788.

On direct review, the Circuit Court collectively considered Hutchinson's several ineffective assistance of counsel claims. *See* Resp.'s Ex. 29 at 8–12, ECF No. \*\*. That court concluded that it could not "with confidence, state that counsel's acts or omissions were outside the *broad* range of professionally competent assistance while at the same time refrain from engaging in hidsight or second-guessing trial tactics." *Id.* at 11. The court further concluded that "no reasonable probability existed for the jury to find in Petitioner's favor, but for errors of his trial counsel," thus failing to established prejudice. *Id.* at 12. With the State court findings in mind, the Court will now newly consider Petitioner's specific objection related to his ineffective assistance of counsel claims.

By his objections, Petitioner maintains that trial counsel's failure "to present mitigating evidence and obtain an independent psychological analysis" unconstitutionally deprived him of effective assistance of counsel. Pet.'s Obj., ECF No. 28 at 7. During the sentencing phase, defense counsel did not present any new evidence or testimony. Instead, he called upon the jury to make a determination on mercy in light of the testimony offered at trial, making particular reference to testimony offered by Dr. Webb. Evidently, neither Petitioner nor his mother believed they had anything more to offer, and accordingly, neither offered additional testimony. In contrast, the prosecution made substantive references to testimony and reported findings made by Dr. Webb and offered further testimony on the question of mercy from Linda Rigney's children.

Consistent with the State court's judgment, even if the decision by defense counsel not to present evidence or significant argument at sentencing was objectively unreasonable, Magistrate Judge Eifert found that Petitioner failed to demonstrate resulting prejudice where there was nonetheless sufficient evidence to support the jury's conclusions.

In response, Petitioner offers that focusing on whether he has offered evidence of resulting prejudice "completely misses the whole point." ECF No. 28 at 8. Instead, Petitioner appears to suggest that an error of this kind categorically amounts to ineffective assistance of counsel in violation of the Sixth Amendment. *Id.* at 8–9. Petitioner relies on a collection of cases in support of his argument, beginning with Justice Workman's dissenting opinion in *State v. Schofield*, 185 W.Va. 199, 207 (1991), where she offered that:

> The determination of whether a defendant should receive mercy is so crucially important that justice for both the state and defendant would be best served by a full presentation of all relevant circumstances without regard to strategy during trial on the merits.

Justice Workman's studied comments in *Schofield* were offered as argument for "bifurcating the issue of mercy in first degree murder cases," so that defendants could be fairly afforded an opportunity to present mitigation evidence at sentencing without disturbing defense theories on the question of guilt. *Id.* While her comments absolutely have merit, they are also contextually bound; and the comments should not be read as an attempt to set a constitutional standard specifying what mitigating evidence defense counsel must present at sentencing.

Though limited, if any, support may be drawn from *Schofield*, Petitioner continues his argument through reference to a collection of out-of-circuit authorities. First, Petitioner directs the Court's attention to Judge Kozinski's opinion in *Clabourne v. Lewis*, 64 F.3d 1373, 1384 (9th Cir. 1995), finding constitutionally ineffective assistance of counsel where defense counsel "failed to adequately prepare and present a case for mitigation at the sentencing hearing." Counsel in

*Clabourne* "did not call any witnesses, introduce any evidence of Clabourne's history of mental illness, or argue any mitigating circumstance besides [the defendant's] mental condition at the time of the offense." *Id.*

Importantly, however, the inadequacies of representation alone did not amount to ineffective assistance of counsel; the court further searched the totality of circumstances for an indication that prejudice resulted from those inadequacies, as required by *Strickland*. The Ninth Circuit specifically observed that the defendant "had nothing to lose by asking the expert witnesses to testify at the sentencing hearing" as "their testimony would not open the door to hidden evidence of aggravating circumstances. Nor [was] this a case where the evidence had already been presented at trial or was so insubstantial that its omission did not cause any prejudice." *Id.* at 1385 (citations omitted). Ultimately, it concluded that there was "a reasonable probability that, but for [defense counsel's] failure to pursue Clabourne's defense diligently at the sentencing phase, the judge would have imposed a sentence other than death." *Id.* at 1387.

As further noted by Petitioner, courts have ruled that failing to obtain and present an independent psychological analysis during sentencing may constitute inadequate assistance of counsel. *See Loyd v. Whitley*, 977 F.2d 149 (5th Cir. 1992) (where the defendant's mental condition was a critical issue in a death penalty proceeding, it was professionally unreasonable for counsel not to obtain an independent psychological evaluation given that resources were available and there was no strategic justification for not presenting an independent evaluation). These same courts, however, have also held that not calling an independent evaluator to testify during sentencing can be a matter of strategic judgment. *See Crutsinger v. Stephens*, 576 Fed.Appx. 422, 427 (5th Cir. 2014) (based on a "thorough investigation," "counsel made the strategic decision not

to present Dr. Goodness's testimony and not to pursue further investigation," and that decision was "guided by sufficient information upon which a reasonable strategic decision could be made.")

Petitioner next turns to *Castro v. Oklahoma*, 71 F.3d 1502 (10th Cir. 1992), arguing that it requires psychiatric evidence be presented at sentencing where the state presents evidence of a defendant's future dangerousness. Petitioner's reliance on *Castro*, however, is also regrettably misplaced. Considering *whether a trial court erred as a matter of law in denying defense counsel's expert request*, the Tenth Circuit explained that "[a]n expert must be appointed if the State presents evidence, psychiatric or otherwise, of the defendant's future dangerousness or continuing threat to society during the sentencing phase, and the indigent defendant establishes the likelihood his mental condition is a significant mitigating factor." *Id.* at 1513 (citing *Brewer v. Reynolds*, 51 F.3d 1519, 1529 (10th Cir. 1995). It is essential to note, however, that the question before the Tenth Circuit in *Castro* was *not the reasonableness of defense counsel's choice* whether or not to request an expert or to otherwise attempt to obtain an independent expert. *See Smith v. Workman*, 550 F.3d 1258, 1266 – 67 (10th Cir. 2008). Accordingly, it is of little to no help in assessing Petitioner's claim.

Here, in deciding not to recall Dr. Webb or offer other psychiatric evidence, Petitioner's counsel made a strategic decision ordinarily within the discretion of counsel. *See Bell v. Cone*, 535 U.S. 685, 699 (2002) (counsel was not ineffective in not recalling medical experts at sentencing where "counsel reasonably could have concluded that the substance of their testimony was still fresh to the jury"); *McNeill v. Polk*, 476 F.3d 206, 217 (4th Cir. 2007) (counsel was not ineffective in not rehashing during sentencing the same evidence of diminished capacity presented at trial). Relying only on hindsight, the Court cannot now say that because defense counsel's chosen strategy was not successful it was necessarily objectively unreasonable. Moreover, as repeatedly

noted, Petitioner has not been able to make a showing that a different decision on this one aspect of the trial would have necessitated a different result. *See Fisher v. Lee*, 215 F.3d 438, 452 (4th Cir. 2000) (holding that the presentation of cumulative psychiatric testimony would not be likely to change outcome of proceedings). Because Petitioner is unable to show prejudice, his claim does not warrant relief regardless of the objective reasonableness of defense counsel's strategic decision.

Accordingly, this Court finds that Petitioner's objection to Magistrate Judge Eifert's finding and recommendation related to claims of ineffective assistance of counsel is without merit.

### D. Sufficiency of Evidence

Hutchinson's seventh assignment of error purports to present an actual innocence claim, though as already recognized by Magistrate Judge Eifert, the claim is more appropriately considered as a challenge to the sufficiency of the evidence. Hutchinson argues that (1) the prosecution's theory of the crime is inconsistent with "willful, deliberate, and premeditated murder" and (2) his conviction is not supported by adequate scientific evidence. ECF No. 3 at 44, 46. Magistrate Judge Eifert found, and this Court agrees, that Petitioner's claim is without merit.

This is not at all a case thinly supported by webs of circumstantial evidence, but is instead the result of a robust collection of direct physical evidence, testimony by multiple eyewitnesses, expert testimony, and Petitioner's own testimony. First, as already noted by Magistrate Judge Eifert, many of the issues raised by Petitioner are related to physical evidence, and parsing the import of each alleged issue would require expert analysis (including, for example, analysis of blood spatter and wound direction). Without testimony from qualified experts, Petitioner's own lay interpretation of complex physical evidence is simply inadequate to challenge his conviction.

Next, Petitioner challenges the sufficiency of DNA and fingerprint evidence; evidence that was thoroughly addressed by expert testimony at trial. Though Petitioner urges that the absence of fingerprints on the murder weapon alone suggests his innocence, the trial court heard expert testimony that *not* finding fingerprints or finding only unusable fingerprints is actually quite common. Similarly, the absence of Jessica Ford's blood on the weapon apparently did not undermine confidence in her narrative when coupled with expert opinion that it was in fact possible that her blood would not have remained on the weapon.

In addition to the physical evidence, which based on expert testimony reasonably supported Hutchinson's guilt, considerable testimony and evidence further support his conviction. Multiple eyewitnesses offered testimony supporting Petitioner's guilt. Additionally, by Petitioner's own testimony, he had been involved in a physical altercation with Ms. Rigney on the night of the murder and had been injured by Chris Ford in a struggle with him the same evening. While Petitioner's testimony provided a competing narrative of the incident, the jury is entrusted with the duty to determine the relative credibility of witnesses at trial, and it was perfectly reasonable for the jurors to credit purported eyewitness testimony for any number of reasons.

Finally, with respect to Petitioner's mental state, the nature of the murder itself could be read to suggest premeditation, and expert testimony supported the conclusion that Petitioner was not legally insane at the time of the offense. As more thoroughly reviewed in the Proposed Findings and Recommendations, in light of all of this evidence, this Court cannot help but conclude that a rational trier of fact could have found Petitioner guilty of first-degree murder beyond a reasonable doubt.

**IV.  CERTIFICATE OF APPEALABILITY**

Finally, the Court considers whether to grant a certificate of appealability. Pursuant to federal statute, "a state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition." *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003) (citing 28 U.S.C. § 2253). A certificate of appealability should only be granted where there is "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). That showing is understood to require that a petitioner must prove "something more than the absence of frivolity or the existence of mere 'good faith' on his or her part." *Miller-El*, 537 U.S. at 338 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983) (internal quotations omitted). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, the Court finds that petitioner has not satisfied the governing standard and thus denies a certificate of appealability.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's objections and **ACCEPTS AND INCORPORATES** the Proposed Findings and Recommendation of the Magistrate Judge. The Court **GRANTS** Respondent's Corrected Motion for Summary Judgment (ECF No. 21), **DENIES** Petitioner's Petition for a Writ of Habeas Corpus (ECF No. 2), **DENIES** Respondent's Motion for Summary Judgment as moot (ECF No. 10), and **DISMISSES** this case from the docket of the court.

The Court **DIRECTS** the Clerk to forward copies of this written opinion and order to all counsel of record, and any unrepresented parties.

ENTER: March 19, 2015

ROBERT C. CHAMBERS, CHIEF JUDGE